**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| ADAPTIVE AVENUE ASSOCIATES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BESTBUY.COM, LLC,<br><br>Defendant. | CASE NO. 7:25-cv-00186-DC-DTG<br><br>JURY TRIAL DEMANDED |

**DEFENDANT BESTBUY.COM, LLC'S**
**OPENING CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION .......... 1

II. OVERVIEW OF THE ASSERTED PATENTS .......... 2

III. DISPUTED CLAIM TERMS .......... 3

A. "Composer" (Claims 11 of the '629 Patent; Claim 1 of the '707 Patent) .......... 3

1. "Composer" Invokes 35 U.S.C. § 112, ¶ 6 .......... 3

2. The Composer's Corresponding Structure .......... 6

B. "Performer" (Claims 11 and 19 of the '629 Patent; Claim 1 of the '707 Patent) .......... 9

1. "Performer" Invokes 35 U.S.C. § 112, ¶ 6 .......... 10

2. The Performer's Corresponding Structure .......... 10

C. "Establishing a List of URLs in Said Composer By One of a Plurality of List Establishment Methodologies the Plurality of List Establishment Methodologies Comprising Manual Entry Via a User Interface Portion of the Composer and Automatic Entry by a Query-based System" (Claim 1 of the '629 Patent) .......... 12

D. "Automatically Locally Displaying" (Claim 11 of the '629 Patent); "Automatically Displaying" (Claim 7 of the '707 Patent); and "Automatically Extracting" (Claim 1 of the '707 Patent) .......... 14

E. "Present Said Created Presentation" (Claim 11 of the '629 Patent) .......... 16

F. "Displaying the Created Presentation … in a Slide Show Format … Wherein Each of Said Plurality of URLs Comprises a Slide Within Said Created Presentation" (Claim 11 of the '629 Patent) .......... 19

IV. CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acromed Corp. v. Sofamor Danek Grp., Inc.*,
253 F.3d 1371 (Fed. Cir. 2001)........................................................................................8

*Advanced Ground Info. Sys., Inc. v. Life360, Inc.*,
830 F.3d 1341 (Fed. Cir. 2016)..................................................................................3, 4, 9

*Applied Medical Resources Corp. v. U.S. Surgical Corp.*,
448 F.3d 1324 (Fed. Cir. 2006)..................................................................................16, 18

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*,
521 F.3d 1328 (Fed. Cir. 2008)........................................................................................6

*Aylus Networks, Inc. v. Apple Inc.*,
856 F.3d 1353 (Fed. Cir. 2017)......................................................................................12

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
713 F.3d 1090 (Fed. Cir. 2013)......................................................................................14

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*,
224 F.3d 1308 (Fed. Cir. 2000)......................................................................................18

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
296 F.3d 1106 (Fed. Cir. 2002)........................................................................................8

*Diebold Nixdorf, Inc. v. Int'l Trade Comm'n*,
899 F.3d 1291 (Fed. Cir. 2018)....................................................................................4, 10

*Google LLC v. EcoFactor, Inc.*,
92 F.4th 1049 (Fed. Cir. 2024) ......................................................................................16

*Koninklijke KPN N.V. v. Telefonaktiebolaget LM Ericsson*,
No. 2:21-cv-00113-JRG, 2022 WL 811072 (E.D. Tex. Mar. 16, 2022)...................................6

*MBO Lab'ys, Inc. v. Becton, Dickinson & Co.*,
474 F.3d 1323 (Fed. Cir. 2007)......................................................................................12

*Media Rts. Techs., Inc. v. Cap. One Fin. Corp.*,
800 F.3d 1366 (Fed. Cir. 2015)........................................................................................5

*Medrad, Inc. v. MRI Devices Corp.*,
401 F.3d 1313 (Fed. Cir. 2005)......................................................................................15

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014)........................................................................................17, 19, 20

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ..................................................................18

*Rain Computing, Inc. v. Samsung Elecs. Am., Inc.*,
989 F.3d 1002 (Fed. Cir. 2021)..........................................................................................3

*Realtime Data, LLC v. Rackspace US, Inc.*,
No. 16-cv-00961-RWS-JDL, 2017 WL 2590195 (E.D. Tex. June 14, 2017) ................5, 8, 9

*Saffran v. Johnson & Johnson*,
712 F.3d 549 (Fed. Cir. 2013)......................................................................................13, 14

*SitePro, Inc. v. WaterBridge Res. LLC*,
No. 23-cv-115-ADA-DTG, 2024 U.S. Dist. LEXIS 31765
(W.D. Tex. Feb. 23, 2024) ..........................................................................................*passim*

*SourceProse Corp. v. AT&T Mobility, LLC*,
No. 11-cv-00117-LY, 2014 U.S. Dist. LEXIS 87194 (W.D. Tex. Jun. 24, 2014) ................14

*Tech. Props. Ltd. LLC v. Huawei Techs. Co.*,
849 F.3d 1349 (Fed. Cir. 2017)..........................................................................................12

*United States Well Servs. v. Halliburton Co.*,
No. 6:21-cv-00367-ADA, 2022 U.S. Dist. LEXIS 50347 (W.D. Tex. Jan. 17,
2022) ...............................................................................................................................15, 16

*Virtru Corp. v. Microsoft Corp.*,
No. 22-cv-00242-ADA, 2023 U.S. Dist. LEXIS 239986 (W.D. Tex. Jan. 22,
2023) ...............................................................................................................................14, 15

*Williamson v. Citrix Online, LLC*,
792 F.3d 1339 (Fed. Cir. 2015).........................................................................................6, 7

**Statutes**

35 U.S.C. § 112, ¶ 2 ...............................................................................................16, 17, 19, 20

35 U.S.C. § 112, ¶ 6 ..........................................................................................................*passim*

Pursuant to the Court's Scheduling Order (Dkt. No. 38), Defendant BestBuy.com, LLC ("Best Buy") respectfully submits this Opening Claim Construction Brief.

## I. INTRODUCTION

Plaintiff Adaptive Avenue Associates, Inc. ("Adaptive") filed this case against Best Buy for alleged infringement of U.S. Patent Nos. 7,171,629 ("the '629 Patent") and, its continuation-in-part, 7,428,707 ("the '707 Patent") (collectively, "the Asserted Patents"). These patents are directed to displaying an automatic slide show of webpages on a single webpage. Adaptive alleges that the scrolling banner at the top of Best Buy's webpage (below) infringes the Asserted Patents.




The parties dispute the construction of four claim terms (or term sets) and the indefiniteness of two claim terms.

Adaptive's claim construction positions for the four contested terms reflect its litigation-driven approach to the construction of the claims of the Asserted Patents, rather than an accurate take on how these terms should actually be defined based on the patents. For the "<u>composer</u>" and "<u>performer</u>" terms, Adaptive urges the Court to ignore the patentee's express claim language in order to escape the consequences of having drafted claims that invoke 35 U.S.C. § 112, ¶ 6. For "<u>establishing a list of URLs …</u>," Adaptive ignores the arguments it made to the Patent Office to overcome prior art during prosecution, in an attempt recapture claim scope it disclaimed. And, for the "<u>automatically …</u>" terms, Adaptive seeks to construe otherwise clear, self-explanatory language by improperly importing limitations into the claims.

On indefiniteness, the limitation requiring that the system's performer "<u>present[s] said created presentation</u>" is indefinite because the intrinsic record describes only "displaying" the

presentation (an action already separately claimed), not presenting it. Federal Circuit precedent requires different claim terms to carry different meanings, so "presenting" cannot mean "displaying." But the intrinsic record is silent about what it means to "present." As a result, a person of ordinary skill in the art ("POSITA") would not be able to determine what the claim means when it recites "presenting" the presentation, rendering the term indefinite. Likewise, the term "wherein each of said plurality of URLs comprises a slide," is indefinite because it is nonsensical. URLs are strings of text that represent addresses to webpages (www.bestbuy.com) – they cannot possibly "comprise a slide" because a slide cannot be part of a URL. Thus, a POSITA would be unable to ascertain the scope of this phrase because it makes no logical sense, and the patent does nothing to explain what the phrase could mean in the context of the claim.

Best Buy's proposed constructions and indefiniteness arguments should be accepted.

## II. OVERVIEW OF THE ASSERTED PATENTS

The Asserted Patents are entitled "Customizable Web Site Access System and Method Therefore." '629 Patent, Title.[1] The patents are directed to a system and method for providing an automated presentation, or slide show, of desired webpages on a single webpage. *Id.*, Abstract, 8:3-14. To provide the slide show, the patented system utilizes a software program that has two main components: a generic "composer 12" and a generic "performer 14" that are stored on host server 16. *Id.*, Abstract, 9:11-29. Figure 1 of the '629 Patent (inset) illustrates generic composer 12 and performer 14 in the overall architecture of the system.



FIG. 1

The composer of the system "is used to create a presentation, [which] includes a list of

[1] Because the specifications of the '629 Patent and '707 Patent overlap significantly, this brief only cites to the '629 Patent for information contained in both specifications.

URLs for display, a desired sequence of display of the URLs, and a duration of display of the URLs." *Id.*, 8:3-14. The patents explain that the composer may be manually initiated by a website owner to create a customized presentation of multiple webpages or may be automatically initiated by a query-based system. *Id.*, 9:17-20. Upon initiation of the composer, the URLs of the sites that make up the presentation and the corresponding display settings (e.g., sequence and duration) are stored on the host server, or sent directly to the performer for display. *Id.*, 9:22-29.

The performer of the system operates to "display the presentation to a user of the web in an automatic slide show presentation." *Id*. The performer can be initiated by navigating to the website where the presentation has been stored. *Id.*, 9:32-38.

## III. DISPUTED CLAIM TERMS

### A. "Composer" (Claims 11 of the '629 Patent; Claim 1 of the '707 Patent)

| Adaptive's Construction | Best Buy's Construction |
|---|---|
| "a software program or a portion of a software program used to create a presentation" | The term is subject to 35 U.S.C. § 112 ¶ 6 as a "means-plus-function" term.<br>Function: "composing/creating a presentation"<br>Structure: see below. |

Construing a means-plus-function limitation is a two-step inquiry. The Court: (1) determines whether 35 U.S.C. § 112 ¶ 6 applies and, if it does, (2) identifies the corresponding structure in the specification that performs the claimed function. *Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, 830 F.3d 1341, 1347 (Fed. Cir. 2016).

#### 1. "Composer" Invokes 35 U.S.C. § 112, ¶ 6

To determine whether § 112, ¶ 6 applies, courts "must inquire 'whether the [disputed claim term is] understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure.'" *Rain Computing, Inc. v. Samsung Elecs. Am., Inc.*, 989 F.3d 1002, 1005 (Fed. Cir. 2021) (quoting *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015)). If not, § 112 ¶ 6 applies. *Id.* There is a rebuttable presumption that § 112 ¶ 6 does not apply

if the term does not include a "means for" performing the stated function, which here is composing/creating a presentation. That presumption is overcome here because the intrinsic and extrinsic evidence show that "composer" "fails to recite sufficiently definite structure" and instead "recites function without reciting sufficient structure for performing that function" as explained below. *Advanced Ground Info. Sys., Inc.*, 830 F.3d at 1347.

*First*, in the context of the relevant claim language, the word "composer" as used in the claims does not include an "algorithmic structure" or state *what* the composer is. *SitePro, Inc. v. WaterBridge Res. LLC*, No. 23-cv-115-ADA-DTG, 2024 U.S. Dist. LEXIS 31765, at *96 (W.D. Tex. Feb. 23, 2024) (J. Gilliland), *adopted by* 2024 U.S. Dist. LEXIS 82797 (W.D. Tex. May 7, 2024). Rather, it just says *something* does the composing. *Advanced Ground*, 830 F.3d at 1347 (affirming application of § 112 ¶ 6 and noting the district court's determination that "the term in context of the relevant claim language suggests the term 'symbol generator' is analogous to a 'means for generating symbols' because the term is simply a description of the function performed."). The relevant claims characterize a "composer" as nothing more than a generic component that composes or creates a presentation. Claim 11 of the '629 Patent recites "creating a presentation in said composer" and then merely includes the functional steps required to create a presentation, including "establishing a list of URLS," "determining a display sequence of said list of URLs," and "determining a duration of display for said list of URLs" – all function, no structure. Claim 1 of the '707 Patent recites "a composer, wherein said composer composes a … presentation through …" the function of "automatic extraction" – again, all function, no structure.

In addition, this functional language associated with the term "composer" fails to "offer any guidance 'that might inform the structural character of the limitation-in-question [i.e., what a composer is] or otherwise impart structure' to the term as recited in the claims[.]" *Diebold Nixdorf, Inc. v. Int'l Trade Comm'n*, 899 F.3d 1291, 1298 (Fed. Cir. 2018). The dependent claims likewise

do not describe particular structural features or flesh out whether "composer" would be understood by a POSITA to be a particular structure:

- Claims 12-20 of the '629 Patent recite the display and function of a "control panel," the location and contents of the "presentation," the contents of the URL list, and the activation of the display function. None of this goes to structural features of a "composer".
- Claims 2-6 of the '707 Patent recite the location and contents of a text file and a meta tag, and the location and function of a control panel. None of this goes to the structural features of a "composer."

Accordingly, the claim language does not suggest that the term "composer" connotes a definite structure. *Media Rts. Techs., Inc. v. Cap. One Fin. Corp.*, 800 F.3d 1366, 1372 (Fed. Cir. 2015) (finding that term "compliance mechanism" invokes §112 ¶ 6 because the asserted claims "simply state that the 'compliance mechanism' can perform various functions"); *see also SitePro*, 2024 U.S. Dist. LEXIS 31765, at *96 (holding the term "facility-interface module" invokes §112 ¶ 6 because it is not a understood in the art "to connote a specific structure" and because it was recited "purely in terms of its function"); *Realtime Data, LLC v. Rackspace US, Inc.*, No. 16-cv-00961-RWS-JDL, 2017 WL 2590195, at *10 (E.D. Tex. June 14, 2017) ("Without any structural guidance from the claim, the presumption against means-plus-function claiming is rebutted….").

*Second*, the '629 Patent's specification describes "composer" in terms of operation, not recognized structure. It broadly describes a system with "a composing portion … used to create a presentation," and then describes that composing portion by its functions – not by identifying any corresponding structure capable of performing those functions. '629 Patent, 8:5-8, 9:45-47 (describing composer in terms of its functions in Fig. 2A), 10:9-19 (describing how composer is used to create a presentation). Likewise, the '707 Patent's specification describes a "composing portion…used to create a presentation" and that "composer 12 is invoked and operates to extract the details…to automatically compose a presentation" – not by identifying any corresponding structure capable of performing the extracting and composing functions. '707 Patent, 8:15-17.

*Third*, "composer" is not a well-known structural term of art to a POSITA. Best Buy's expert Dr. Rubin confirmed that a skilled artisan would not understand "composer" to connote a particular structure, and that contemporaneous technical dictionaries did not define "composer" as a structural term. Declaration of Aviel D. Rubin ("Rubin Decl.") ¶¶ 42-45.

Adaptive's need to define "composer" underscores that it has no commonly understood structural meaning because if it did, no construction would be necessary. The term could simply be given its plain and ordinary meaning (which Adaptive is against) unless the applicant was his own lexicographer or disavowed claim scope during prosecution. Regardless of the reason, Adaptive's proposal merely defines the term by what it does, and crucially, not what it is.

For all these reasons, "composer" invokes 35 U.S.C. § 112 ¶ 6.

### 2. The Composer's Corresponding Structure

Once 35 U.S.C. § 112 ¶ 6 applies, the corresponding structure for performing the claimed function must be identified in the specification, because the claim must be limited by that corresponding structure. "Structure disclosed in the specification qualifies as corresponding structure if the intrinsic evidence clearly links or associates that structure to the function recited in the claim." *Williamson*, 792 F.3d at 1352. Where, as here, the disclosed structure is implemented in software, the corresponding structure can be a special-purpose computer programmed to carry out the disclosed algorithm – but not a generic computer. *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008).

#### a. The Composer's Corresponding Structure for the '629 Patent

When defining corresponding structure of a § 112, ¶ 6 claim term, it is proper to reference disclosed figures together with the description of the features and configuration shown by those figures. *See Koninklijke KPN N.V. v. Telefonaktiebolaget LM Ericsson*, No. 2:21-cv-00113-JRG, 2022 WL 811072, at *15 (E.D. Tex. Mar. 16, 2022) (holding "information collector" was subject

to § 112, ¶ 6 because it had no meaning in the art and lacked sufficient structural connotation, and identifying corresponding structure as the figure depicting information collector along with "the features and configuration disclosed in the [asserted patent]; and equivalents thereof").

For the '629 patent, the *function* recited in the claim language is creating a presentation. Rubin Decl. ¶ 46. Regarding *structure*, the specification discloses an algorithm for that function in operations 308, 310, and 314 of Fig. 2A, along with the corresponding user interface shown in Fig. 3 (interface showing input blocks for URLs 42, duration 44, and sequence 48). This structure maps directly onto Claim 11's requirements for "creating a presentation in said composer" by "establishing a list of URLs …determining a display sequence of said list … [and] determining a duration of display for said list …" '629 Patent at Claim 11; *Williamson*, 792 F.3d at 1352; Rubin Decl. ¶¶ 46-50. Indeed, the patent labels Fig. 2A as "a flow chart depicting the operation of the composer portion." '629 Patent, 8:28-30. Accordingly, the algorithm of Fig. 2A and the user interface of Fig. 3 are "clearly link[ed]" to the claimed function and constitutes the corresponding structure for performing that function. *Williamson*, 792 F.3d at 1352.

The specification also confirms that the algorithm of Fig. 2A and related user interface of Fig. 3 together perform the functions of the claimed "composer" (creating a presentation by establishing a list of URLs, determining display sequence and determining display duration):

- "Composer 12 may be manually invoked … to create a customized presentation" that has "the URLs of the sites that comprise the presentation and the corresponding options of the presentation, e.g., sequence of the URLs [and] the duration that each is to be displayed…." ('629 patent at 9:17-25);

- [T]he site owner/developer is requested to input their desired list of web sites … per input block 308. The manner of input may be an interactive user interface …." (*id.* at 10:27-29);

- "[T]he site owner/developer is also requested to input the desired duration of display for each listed web site, per input block 310 …." (*id.* at 10:27-30); and

- "The site owner/developer is also requested to enter the order in which they would like their entered list of web sites to be displayed, i.e., in sequential order … or in random order, per input block 314 …." (*id.* at 10:39-44).

*See also* ’629 Patent, 11:11-14 (“when using the composer 12, the site owner/developer is prompted to enter their presentation settings via interaction with a data entry screen”), 11:63-67 (composer is used to create presentations), 12:4-6 (website list is added through use of composer).

Further, Dr. Rubin confirmed that, in light of the specification, a POSITA would understand the term “composer” to have the structure described in Figs. 2A and 3. Rubin Decl. ¶¶ 46-50. Dr. Rubin also explained that a POSITA would understand how to develop a software program that contained a user interface with input fields to accept user display preferences based on the teachings of the specification. *Id*.

Accordingly, the corresponding structure for “composer” of Claim 11 of the ’629 Patent is: a software program (i.e., a special-purpose computer) that provides a user interface to gather from a user a list of websites/URLs and associated display preferences (the duration and sequence/order of the URLs) in accordance with the algorithm shown in Fig. 2A (blocks 308, 310, 314) and the UI shown in Fig. 3, and equivalents thereof.[2] Rubin Decl. ¶ 50.

#### b. The Composer’s Corresponding Structure for the ’707 Patent

Claim 1 of the ’707 Patent is directed to composing the presentation only via the “automatic extraction” functionality, which is described in the specification as extracting URLs from a text files, a webpage or meta tag. Therefore, the corresponding structure analysis should focus on that portion of the specification. *See Realtime Data, LLC*, 2017 WL 2590195, *11 (“Because the independent claims only require the data storage function, the Court focuses its review [on that portion] of the specification …”). The ’707 Patent’s specification discloses the relevant algorithm

---

[2] Although the patent discusses other functions that a “composer” performs, “[t]he court must construe the function of a means-plus-function limitation to include the limitations contained in the claim language, and only those limitations.” *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1113 (Fed. Cir. 2002); *Acromed Corp. v. Sofamor Danek Grp., Inc.*, 253 F.3d 1371, 1382 (Fed. Cir. 2001) (“Under 35 U.S.C. § 112, ¶ 6, a court may not import into the claim structural limitations from the written description that are unnecessary to perform the claimed function.”).

in Fig. 12 (operations 904, 906, 908) and UI in Fig. 13, along with the accompanying text describing the auto compose screen and the claimed automatic extraction methods:

- "[T]he viewer is presented [via the UI in Fig. 13] with the opportunity to view a desired web site in auto compose format, see example auto compose screen on FIG. 13, where a 'view now' 100 button is provided." ('707 Patent at 8:9-12);

- Once the 'view now' 100 button is clicked in the UI of Fig. 13, "the composer 12 is invoked and operates to extract the details, in one of three manners, to automatically compose a presentation…" (*id.* at 8:15-18); and

- Detailing the three extraction methods 904 (extracting hyperlinks within a webpage, 906 (extracting a presentation/rendition text file within a webpage), and 908 (extracting a meta tag withing a webpage) (*id.* at 8:19-40).

And the patent expressly describes Fig. 12 as "a flow chart depicting the auto compose function" and Fig. 13 as "an auto compose screen for display to a user." *Id.*, 2:66-3:2. Dr. Rubin confirms that a POSITA would understand the corresponding structure and how to implement the extraction operations to create a presentation based on the specification. Rubin Decl. ¶¶ 51-53.

Accordingly, the corresponding structure for "composer" in Claim 1 of the '707 Patent is: a software program (i.e., a special-purpose computer) that provides a user interface and performs automatic extraction to create a presentation in accordance with the algorithm shown in Fig. 12 (blocks 904, 906, 908) and the UI of Fig. 13, and equivalents thereof. Rubin Decl. ¶¶ 51-53

### B. **"Performer"** (Claims 11 and 19 of the '629 Patent; Claim 1 of the '707 Patent)

| **Adaptive's Construction** | **Best Buy's Construction** |
|---|---|
| "a software program or a portion of a software program that operates to automatically display the presentation to a web user" | The term is subject to 35 U.S.C. § 112 ¶ 6 as a "means-plus-function" term.<br>Function: "performing a presentation"<br>Structure: see below. |

The same analysis that compels § 112 ¶ 6 treatment for "composer" applies to "performer." The intrinsic and extrinsic evidence shows that "performer" does not connote structure. *Advanced Ground Info. Sys.*, 830 F.3d at 1347.

#### 1. “Performer” Invokes 35 U.S.C. § 112, ¶ 6

*First*, the claim language defines “performer” by what it does, not what it is. Claim 11 of the ’629 Patent recites “a performer operating on said host server to present said created presentation.” Similarly, Claim 1 of the ’707 Patent recites “a performer, wherein said performer displays said web slide show presentation.” This functional language does not supply structural guidance. *Diebold Nixdorf, Inc.*, 899 F.3d at 1298. And, as with “composer,” the dependent claims add no structural limitations that would suggest a definite structure for “performer”:

- Claims 12-20 of the ’629 Patent recite the display and function of a “control panel,” the location and contents of the “presentation,” the contents of the URL list, and the activation of the display function, but no structural features of a “performer”; and
- Claims 2-6 of the ’707 Patent recite the location and contents of a text file and meta tag, the control panel and its controls and location, but no structural features of a “performer.”

*Second*, the specification describes “performer” in terms of operation rather than recognized structure. It describes a “performing portion” that automatically displays the presentation according to the URL list, sequence, and duration, and then explains the performer’s operation (e.g., in Fig. 2B), but not what a performer is. ’629 Patent, 8:5-14; 9:49-58, 11:29-31.

*Third*, “performer” is not a known structural term of art. Plaintiff’s proposed construction defines “performer” as software “that operates to automatically display the presentation,” which again defines the term by function, not structure. Dr. Rubin confirms that “performer” lacks an understood structure and is not defined in technical dictionaries. Rubin Decl. ¶¶ 54-56. Accordingly, “performer” invokes § 112, ¶ 6. *SitePro*, 2024 U.S. Dist. LEXIS 31765, at *96.

#### 2. The Performer’s Corresponding Structure

The function recited in Claim 11 of the ‘629 Patent is performing the created presentation (including automatically locally displaying the created presentation as presented by the

performer).[3] Rubin Decl. ¶ 55. The specification discloses the algorithm for that function in operations 330 and 332 of Fig. 2B, together with the user interface shown in Fig. 4 (including a display area 52). And the ’629 Patent describes Fig. 2B as depicting the “operation of the performer portion.” ’629 Patent, 8:31-33. The written description links this structure to the claimed function by explaining that “performer 14 is that portion of the software of system 10 that a user/visitor 24 to the web utilizes to access and view the customized presentation” and that that “[u]pon invoking the performer 14, the user 24 is … provided with the presentation 20.” ’629 patent, 9:30-40. It also details the algorithm described in Fig. 2B, explaining that “the performer 14 operates to load the presentation 20 including the URLs and presentation preferences, per operations block 330, and to sequence through the URLs with display to the user 24, per operations block 332.” *Id.*, 10:51-58. The remaining discussions of “performer” within the specification discuss the same structure. *E.g.*, ’629 patent, 11:3-4 (“performer … sequence[s] through the URLs…”), 11:29-31 (performer displays “list of desired web sites”), 12:44-49 (performer “presents a slide show of the linked webpages”), 13:15-20 (performer presents “web site display area” showing presentation). Further, Dr. Rubin confirmed that, in light of the specification, a POSITA would understand the term “performer” to have the structure described in Figs. 2B and 4. Rubin Decl. ¶¶ 57-60. Dr. Rubin also explained that a POSITA would understand how to develop a software program that contained a user interface with a display area to display a presentation. *Id.*

Accordingly, the corresponding structure for “performer” is a software program (i.e, a special-purpose computer) that loads a presentation (including URLs and presentation preferences) and sequences/displays the URLs to the user in accordance with the algorithm shown in Fig. 2B (blocks 330 and 332) and the UI shown in Fig. 4, and equivalents thereof. Rubin Decl. ¶¶ 57-60.

---

[3] Claim 1 of the ’707 Patent describes a function that is substantially the same (“a performer, wherein said performer displays said web slide show presentation”) and discloses the same structure as the ’629 Patent. *See* ’707 Patent at Figs. 2B and 4.

### C. **"Establishing a List of URLs in Said Composer By One of a Plurality of List Establishment Methodologies the Plurality of List Establishment Methodologies Comprising Manual Entry Via a User Interface Portion of the Composer and Automatic Entry by a Query-based System"** (Claim 1 of the '629 Patent)

| Adaptive's Construction | Best Buy's Construction |
|---|---|
| Plain and ordinary meaning | Establishing a list of URLs in said composer by one of multiple list establishment methodologies, wherein the composer is adapted to provide *both* manual entry via a user interface portion of the composer and automatic entry by a query-based system |

Best Buy's construction clarifies for the jury that this claim language requires <u>both</u> of the recited methodologies. Its construction is compelled by prosecution disclaimer because the patentee clearly disavowed claim scope when distinguishing the asserted claims over the prior art. "Prosecution arguments … which draw distinctions between the patented invention and the prior art are useful for determining whether the patentee intended to surrender territory, since they indicate in the inventor's own words what the invention is not. *MBO Lab'ys, Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1330 (Fed. Cir. 2007); *see also Tech. Props. Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349, 1356-57 (Fed. Cir. 2017) ("An applicant's statements to the PTO characterizing its invention may give rise to prosecution disclaimer.").

Disclaimer applies when the patentee's statements are "clear and unmistakable." *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017). Here, the prosecution reflects repeated, clear representations by the patentee that the claimed invention requires a plurality of list establishment methodologies – including <u>both</u> manual entry via a UI and automatic entry via a query-based system – and that the prior art was deficient for failing to provide <u>both</u> methodologies.

*First*, this claim term was added by amendment in response to the Examiner's rejection of the claim over U.S. Patent No. 6,904,450 ("King") in view of U.S. Patent No. 6,654,785 ("Craig"). When describing the amendment, the patentee stated that the claim "recites the step of establishing a list of URLs in said composer by one of <u>a plurality</u> of list establishment methodologies, the

plurality of list establishment methodologies comprising manual entry via a user interface portion of the composer and automatic entry by a query-based system." Ex. A (7-19-06 Remarks), 13 (emphasis added). The patentee also emphasized: "[t]he composer is therefore adapted to provide a plurality of list acceptance methodologies." *Id.*, 14 (emphasis added). The patentee further confirmed that "the present invention provides a user with a plurality of list formulation options." *Id.*, 13 (emphasis added). The patentee then went on to explain that "[n]either Craig nor King teach or suggest a composer adapted to provide a plurality of list acceptance methodologies, wherein the plurality of list acceptance methodologies comprise manual entry via a user interface portion of the composer and automatic entry by a query-based system, as recited in part in … amended Claim[] 9 [issued Claim 11]." *Id.*, 14. (emphasis added).

*Second*, the Examiner echoed and relied on the patentee's framing, identifying the plurality of list acceptance methodologies (including manual UI entry and automatic query-based entry) as a "uniquely distinct feature" not found or suggested in the prior art:

> Applicant has claimed uniquely distinct features in the instant invention which are not found in the prior art either singularly or in combination. They are [sic] customized web site access system, comprising wherein the composer is adapted to provide a plurality of list acceptance methodologies, and wherein the plurality of list acceptance methodologies comprises manual entry via a user interface portion of the composer and automatic entry by a query-based. These features are not found or suggested in the prior art.

Ex. B (9-11-06 Notice of Allowance), 3 (emphasis added).

Taken together, the patentee's and Examiner's statements show that Plaintiff "sought to distinguish prior art by representing to the examiner that" the claims of the invention require a plurality of list acceptance methodologies and that providing a single list acceptance methodology does not satisfy the claims. *Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013) (holding that patentee disavowed claim scope through arguments distinguishing a prior art reference). Further, "the record before us makes clear that the examiner shared [Plaintiff's] stated

view" of the claim term. *Id.*; Ex. B, 3; *see also Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1096 (Fed. Cir. 2013) ("If an applicant chooses, she can challenge an examiner's characterization in order to avoid any chance for disclaimer….").

Accordingly, the Court should construe this limitation to require a plurality of list establishment methodologies, including both manual UI entry and automatic query-based entry, consistent with Best Buy's proposed construction.

### D. **"Automatically Locally Displaying"** (Claim 11 of the '629 Patent); **"Automatically Displaying"** (Claim 7 of the '707 Patent); and **"Automatically Extracting"** (Claim 1 of the '707 Patent)

| Claim Term | Adaptive's Construction | Best Buy's Construction |
|---|---|---|
| "automatically locally displaying" | "displaying without human intervention on the user's machine" | Plain and ordinary meaning; no construction necessary |
| "automatically displaying" | "displaying without human intervention" | Plain and ordinary meaning; no construction necessary |
| "automatically extracting" | "obtaining, acquiring without human intervention" | Plain and ordinary meaning; no construction necessary |

For these terms, plain and ordinary meaning should control because the meaning of each claim term is readily understandable on its face, and Adaptive's proposed constructions would improperly import unsupported limitations into the claims.

Effecting all three terms is Adaptive's position that "automatically" must mean "without human intervention." This proposed construction should be rejected for at least two reasons.

*First*, "automatically" is a commonly understood word that courts in this District have determined needs no construction. *See, e.g.*, *Virtru Corp. v. Microsoft Corp.*, No. 22-cv-00242-ADA, 2023 U.S. Dist. LEXIS 239986, at *37-39 (W.D. Tex. Jan. 22, 2023) (rejecting a construction of "automatically requesting" requiring "without human input" and ruling that no construction is necessary); *SourceProse Corp. v. AT&T Mobility, LLC*, No. 11-cv-00117-LY, 2014 U.S. Dist. LEXIS 87194, at *32-35 (W.D. Tex. Jun. 24, 2014) (rejecting a construction of

"automatically adjusting" requiring "without user interaction" and holding that no construction is necessary). Commonly understood claim terms should be "given their plain and ordinary meaning." *Virtru Corp.*, 2023 U.S. Dist. LEXIS 239986, at *4 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*)). "Where 'commonly understood words' are used, the 'ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent'" and no further construction is needed. *United States Well Servs. v. Halliburton Co.*, No. 6:21-cv-00367-ADA, 2022 U.S. Dist. LEXIS 50347, at *84 (W.D. Tex. Jan. 17, 2022) (quoting *Phillips*, 415 F.3d at1314). Here, because "automatically" is a commonly understood word, no construction is needed. *Id*.

*Second*, Adaptive's construction invites error by proposing a definition that improperly imports a limitation out of thin air that contradicts the term's plain meaning, as suggested by the claims and specification of the Asserted Patents. "Automatically" does not require an absolute bar to human intervention. Indeed, both the claims and the specification explain that the step of "automatically" displaying is initiated by a user's (i.e., a human's) action. For example, dependent Claim 16 of the '629 Patent, which depends from asserted independent Claim 11, recites that the "step of displaying is automatically activated by entry into a web site through local <u>user-entry</u> of a URL, by local <u>activation</u> of a hyper-link, … or by local <u>selection</u> of one of a plurality of presentations" – all actions performed by the user. '629 Patent, Claim 16 (emphasis added). And, the specification states that the "performer 14 may be activated by a <u>user 24</u> by simply <u>entering</u> a web site, by <u>selecting</u> a site…, by <u>selecting</u> a hyperlink, … etc." – again, all actions performed by the user. *Id.*, 9:31-35.

Under Federal Circuit precedent, it is improper to both "interpret an independent claim in a way that is inconsistent with a claim which depends from it"[4] and "interpret claim terms in a way

---

[4] *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1317 (Fed. Cir. 2005).

that excludes embodiments disclosed in the specification."[5] Adaptive's attempt to import an absolute bar to human intervention into its construction for "automatically" violates both Federal Circuit rules and should be rejected for each of these reasons.

Adaptive also intends to define automatically "locally" displaying as meaning displaying "on the user's machine." Because "locally displaying" is an easily understandable phrase and Adaptive's construction impermissibly seeks to unnecessarily import a limitation, Adaptive's construction should be rejected and this term should be afforded its plain and ordinary meaning. *United States Well Servs.*, 2022 U.S. Dist. LEXIS 50347, at *84.

Adaptive also intends to define automatically "extracting" as obtaining or acquiring. Once again, because "extracting" is commonly understood and Adaptive merely seeks to replace "extracting" with synonyms, Adaptive's construction should be rejected and this term should be afforded its plain and ordinary meaning. Adaptive's construction adds further confusion by requiring both "obtaining" and "acquiring" – as it is not clear what purpose having both of those words in the construction serves.

In light of the above, Adaptive's proposed constructions should be rejected; each claim term should instead be given its plain and ordinary meaning.

**E. "Present Said Created Presentation"** (Claim 11 of the '629 Patent)

| Adaptive's Construction | Best Buy' Construction |
|---|---|
| Plain and ordinary meaning / Not indefinite | Indefinite under 35 U.S.C. § 112, ¶ 2 |

Claim 11 of the '629 Patent requires the claimed performer to both "present said created presentation" and "automatically locally display[] the created presentation." Nothing in the intrinsic record, however, discloses anything other than *displaying* the created presentation – *there is no discussion of "presenting" it*. And presenting cannot also mean displaying. *Applied Medical*

[5] *Google LLC v. EcoFactor, Inc.*, 92 F.4th 1049, 1058 (Fed. Cir. 2024).

*Resources Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006). A POSITA is therefore unable to determine the scope of the term "present said created presentation," with reasonable certainty. As such, the claim phrase is invalid as indefinite under 35 U.S.C. § 112, ¶ 2.

Under § 112, ¶ 2, patent claims "must particularly point out and distinctly claim the subject matter which the inventor regards as the invention." 35 U.S.C. § 112, ¶ 2 (emphasis added). A patent claim is indefinite if it fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention when read in light of the specification and prosecution history. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

Here, claim 11 recites both "present[ing] said created presentation" and a separate step of "displaying the created presentation" – actions that are, on their face, different. Rubin Decl. ¶¶ 63-65. The '629 Patent's specification describes the invention as a system in which a "composer" creates a sequence of webpages or URLs and a "performer" then automatically displays this sequence as a slide show to a user on a local device. '629 Patent, 8:7-10 (composer creates the presentation), 9:11-24 (performer displays the presentation). Notably, the specification consistently and only uses the term "display" when describing how the performance of a presentation is provided – i.e., the performer operates to "automatically display the presentation to a user of the web." *Id.*, 8:10-14. This creates an ambiguity: the claims require the presenting and displaying of a created presentation, yet the specification only provides a clear description of displaying the presentation. Because the intrinsic record does not describe "presenting" the presentation, or otherwise distinguish it from "display" (in the context of the claimed system), a POSITA cannot determine with reasonable certainty what "present said created presentation" entails beyond what is already captured by displaying the presentation, yet it must be something different or both words should not have been used in the claim. Rubin Decl. ¶¶ 66-71.

It is well-settled Federal Circuit law that when a patent claim uses different words, those

words are presumed to mean different things absent clear evidence to the contrary. *Applied Medical Resources Corp.* 448 F.3d at 1333 n.3 ("the use of two terms in a claim requires that they connote different *meanings*," absent evidence to rebut that presumption). In the absence of such evidence, the Court should not artificially collapse distinct words into a single meaning unless the intrinsic record compels it. *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000).

Here, the claim independently recites that the created presentation is both presented and displayed. So, the term "present" must be given a meaning that is distinct from "displaying" – otherwise the claim would redundantly recite the same limitation twice using different verbs, which violates the presumption that distinct terms must mean different things or they fail to give effect to all claim language. *See Phillips,* 415 F.3d at 1314–15 (claim language should be given effect and not rendered redundant).

The specification of the '629 Patent never explains what "present" entails. It does not describe any separate step of presenting that is conceptually or functionally distinguishable from simply displaying the presentation via the performer. The '629 Patent's file history does not provide any further clarity either. Without any guidance in the intrinsic record to explain what presenting means – if different from displaying – a skilled artisan is left to speculate whether the term requires an additional action (e.g., invoking, transmitting, initiating, or otherwise making available a presentation) or is redundant with the display step. Rubin Decl. ¶¶ 66-71. This lack of guidance from the specification renders "present said created presentation" indefinite, because the claim fails to inform a POSITA with reasonable certainty about the scope of what is claimed. *Id.*

Accordingly, because (1) the claim recites both presenting and displaying the created presentation without clarifying the difference, (2) these words are presumed to have different meanings in the absence of a clear indication that they mean the same thing, and (3) the intrinsic

record is silent as to what it means to "present" the presentation – the claim term "present said created presentation" is indefinite under 35 U.S.C. §, ¶ 2. Rubin Decl. ¶¶ 66-71; *see also SitePro*, 2024 U.S. Dist. LEXIS 31765, at *163-172.

### F. "Displaying the Created Presentation … in a Slide Show Format … Wherein Each of Said Plurality of URLs Comprises a Slide Within Said Created Presentation" (Claim 11 of the '629 Patent)

| Adaptive's Construction | Best Buy' Construction |
|---|---|
| Plain and ordinary meaning / Not indefinite | Indefinite under 35 U.S.C. § 112, ¶ 2 |

This phrase, requiring the recited URLs to comprise a slide, is nonsensical and therefore a POSITA is not able to determine its scope with reasonable certainty. Rubin Decl. ¶¶ 72-81. As such, it is invalid as indefinite under 35 U.S.C. § 112, ¶ 2.

Under § 112, ¶ 2 a patent claim is indefinite if it fails to inform, with reasonable certainty, a POSITA about the scope of the invention when read in light of the specification and prosecution history. *Nautilus, Inc.*, 572 U.S. at 901. The limitation at issue purports to require "displaying the created presentation … in a slide show format … wherein each of said plurality of URLs comprises a slide within said created presentation." But this claim language makes no technical or conceptual sense because URLs are strings of text that represent addresses to webpages; they are not "slides" nor can they comprise a "slide." Rubin Decl. ¶¶ 74-76. Thus, a POSITA would be unable to determine the scope of the claim term. Rubin Decl. ¶¶ 79-81.

The specification does not provide any clarity for this nonsensical claim limitation. The '629 Patent describes a "presentation" as a sequence of webpages identified by URLs that are automatically displayed in a server-client environment. For example, the specification explains that "the presentation includes a list of URLs for display, a desired sequence of display of the URLs, and a duration of display of the URLs," which a performer displays to an end user as a slide show. '629 Patent, Abstract. The '629 Patent, however, only discusses displaying a sequence of webpages identified by URLs; it does not support or otherwise describe that a URL itself

"comprises a slide." The '629 Patent's file history is also no help here. The intrinsic record thus fails to explain what is meant by a URL comprising a slide, and frankly, it would seem impossible to do so. *See* '629 Patent, Abstract; 8:7-10; 9:11-24. Dr. Rubin agrees that the intrinsic record fails to provide any objective criteria or structure that would allow a POSITA to determine whether a particular URL satisfies this limitation. Rubin Decl. ¶¶ 77-78.

*Akamai Techs., Inc. v. MediaPointe, Inc.* is instructive. In *Akamai*, the Federal Circuit affirmed a finding of indefiniteness under *Nautilus* where the claims used language that lacked objective boundaries and the specification failed to explain how a POSITA could determine whether the limitation was satisfied. 159 F.4th 1370, 1379 (Fed. Cir. 2025). The court explained that when the intrinsic record provides no meaningful guidance for distinguishing the scope of a claim term, the claims fail to inform skilled artisans of their bounds with reasonable certainty and are therefore indefinite under § 112. *Id.* The same result should be reached here because a claim term that conflates an address (URL) with a content object (slide) without any structural or functional description in the specification does not satisfy the *Nautilus* standard.

Further, this ambiguity cannot be cured by reading around the limitation; the limitation is written in a way that is incoherent in the first instance. The specification's failure to define how – or even whether – a URL can comprise a slide (it cannot) would leave skilled artisans guessing about the scope of the claimed invention, contrary to the notice function of patent claims embodied in § 112, ¶ 2. Rubin Decl. ¶¶ 72-81; *see also SitePro*, 2024 U.S. Dist. LEXIS 31765, at *163-172. Accordingly, the limitation "wherein each of said plurality of URLs comprises a slide within said created presentation" is indefinite under 35 U.S.C. § 112, ¶ 2.

## IV. CONCLUSION

For the foregoing reasons, Best Buy respectfully requests the Court to enter an Order adopting Best Buy's constructions and indefiniteness challenges set forth herein.

Dated: February 2, 2026

Respectfully submitted,

*/s/Michael J. Zinna*

Michael J. Zinna (Admitted in W.D. Tex.)
Vincent M. Ferraro (Admitted in W.D. Tex.)
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
Email: mzinna@kelleydrye.com
Email: vferraro@kelleydrye.com

*Counsel for Defendant BestBuy.com, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 2, 2026 a true and correct copy of the foregoing document was filed electronically with the Clerk of this Court and served on all parties of record via the Court's ECF System.

*/s/Michael J. Zinna*
Michael J. Zinna